| | |
|---|---|
| UNITED STATES of AMERICA, | |
| v. | Criminal No. 13-cr-0094 (BAH) |
| GUTHRIE WRIGHT | Judge Beryl A. Howell |
| Defendant. | |

## <u>MEMORANDUM OPINION</u>

The defendant Guthrie Wright filed this *pro se* motion, pursuant to 28 U.S.C. § 2255, to vacate on grounds of ineffective assistance of counsel: (1) his conviction on his plea of guilty, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), to two felony narcotics and firearm offenses, for which he faced a combined advisory sentencing range under the U.S. Sentencing Guidelines of at least 262 months; and (2) his sentence to the agreed-upon 120-month prison term. *See* Def.'s Mot. Vacate, ECF No. 24; Def.'s Mem. Supp. Mot. Vacate ("Def.'s Mem.") at 1, ECF No. 27. For the reasons discussed below, the defendant's motion is denied.

## I.  BACKGROUND

### A.  Traffic Stop and Search of Defendant's Mother's Apartment

The facts in this case are undisputed. The defendant confirmed at least four times that he had reviewed the facts presented in the Statement of Offense submitted by the government and agreed to the accuracy of that factual presentation. In addition, to acknowledging, at the end of the Statement of Offense itself, that he had "carefully reviewed every part of it" and "voluntarily agree[d] to it," Statement of Offense ("Stmt. Offense"), at 4, ECF NO. 12, the defendant executed the Plea Agreement, in which he agreed that the "'Statement of the Offense' fairly and accurately describes [defendant's] actions," Plea Agreement ¶ 6, ECF No. 11. Then, at his plea hearing, the defendant stated, under oath that the Statement of Offense "fully and accurately set

forth what happened in [his] case." Plea Hr'g Tr., July 19, 2013, at 14:9–13. The defendant

confirmed a fourth time his adoption of these facts at his sentencing hearing: when questioned by

the Court, he raised no objection to the Court's adoption of the facts enumerated in Presentence

Investigation Report ("PSR"), which repeated the facts set out in the Statement of Offense.

Sentencing Hr'g Tr., Oct. 25, 2013, at 5:2–6:1; PSR ¶¶ 16- 22, ECF No. 16. Nor does the

defendant now contest the verity of these underlying facts for his conviction and sentence. *See

generally* Def.'s Mem.

 As set out in the Statement of Offense, the facts underlying the defendant's conviction

and sentence are as follows. On November 9, 2012, Metropolitan Police Department ("MPD")

officers conducted a traffic stop of the defendant's van. Stmt. Offense at 1. The defendant had

"the odor of alcohol on his breath" and, when questioned by officers, admitted that "he had been

drinking" and had "'drinks' in a cooler in his van." *Id.* The defendant was placed under arrest

after the officers found "open bottles of alcohol" in the backseat of the defendant's vehicle. *Id.*

The officers searched the defendant and found "in Defendant's pants" ziplock bags containing

3.9 grams of cocaine, 4.3 grams of marijuana, and 15 tablets of the drug Methylone. *Id.* The

defendant was arrested, and "repeatedly voiced concerns that his mother and 13-year-old son

would not know of his arrest . . . indicat[ing] that he lived with his mother and his son at his

mother's apartment." *Id.* at 2.

 After transporting the defendant to the police station, police officers went to the

defendant's mother's apartment, where they obtained both "oral and written consent [from her]

. . . to search areas of the apartment where Defendant usually slept, specifically in the living

room and in his [13-year-old] son's bedroom." *Id.* The defendant's mother, who is the legal

guardian of the defendant's son, gave police a written statement attesting "that she had daily access to the bedroom, which Defendant shared with his minor son." *Id.* Upon searching the bedroom, the officers found a backpack and an attaché bag "stacked on top of each other" towards the front of an open closet. *Id.* The attaché bag contained mail in the defendant's name including photos and identification cards, and a loaded ".40 caliber semi-automatic 'GLOCK' firearm" with several rounds of ammunition. *Id.* The backpack also contained mail addressed to the defendant, "a 9mm semi-automatic 'SKYY Arms' firearm," which was also loaded, $1,180 in cash, 48.9 grams of cocaine, 68 Methylone tables, 4.1 grams of heroin, "hundreds of empty ziplock bags, a digital scale, measuring spoons," and other "narcotics distribution paraphernalia." *Id.* The defendant does not contest that the two bags belonged to him. *Id.* at 3.

At the time the defendant was arrested, he was on parole for a prior conviction for possession with intent to distribute heroin in District of Columbia Superior Court ("D.C. Superior Court") case number 1999-FEL-009013. *See* PSR ¶¶ 46, 49. In addition to that felony narcotics conviction, the defendant had one other prior felony conviction for distribution of cocaine in D.C. Superior Court case number 1991-FEL-011533, both of which prior convictions qualified the defendant for classification as a "career offender" under the United States Sentencing Guideline ("U.S.S.G.") § 4A1.1 and resulted in enhanced penalties. PSR ¶¶ 45, 51. In addition to these two prior felony narcotics offenses, the defendant had five previous convictions as an adult for: (1) possession with intent to distribute marijuana and possession of phencyclidine ("PCP") in D.C. Superior Court case number 1986-FEL-004496; (2) attempted possession of cocaine in D.C. Superior Court case number 1987-CMD-001956; (3) attempted distribution of PCP in D.C. Superior Court case number 1987-FEL-007765; (4) distribution of

cocaine in D.C. Superior Court case number 1989-FEL-000135; and (5) simple assault in D.C. Superior Court case number 2007-CMD-29702. PSR ¶¶ 41-44, 47. Related to these offenses, the defendant had his parole revoked a total of seven times. *Id*.

## B. Procedural History

At the defendant's initial appearance following his arrest, Assistant Public Defender Jonathan Jeffress of the Federal Public Defender Service was appointed to represent him. *See* Nov. 9, 2012 Minute Entry. Thereafter, the defendant consented three times to exclude time from the thirty-day deadline for filing an indictment pursuant to the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, which usually indicates that the government and the defendant are contemplating or engaging in plea negotiations. *See* Nov. 30, 2012 Minute Entry for Status Hearing; Dec. 17, 2012 Minute Entry for proceedings (noting that that the "[p]arties continue to discuss plea negotiations."); Feb. 28, 2013 Minute Entry for Control/Status Hearing. Over four months after the defendant's arrest, the defendant was indicted by a grand jury on eight counts. *See* Indictment as to Guthrie Wright ("Indictment"), ECF No. 7.

After the indictment, the defendant, represented by Mr. Jeffress, agreed to five exclusions of time from the post-indictment deadline for bringing the defendant to trial under the Speedy Trial Act. *See* Apr. 11, 2013 Minute Entry (excluding fourteen days from the post-indictment calculation); Apr. 25, 2013 Minute Entry (excluding fifteen days); May 10, 2013 Minute Entry (excluding fourteen days); May 24, 2013 Minute Entry (excluding fourteen days); June 7, 2013 Minute Entry (excluding fourteen days). At the June 7, 2013 hearing, defense counsel Jeffress' oral motion to withdraw from the case was granted and, that same day, Jenifer Wicks was appointed by the Court to substitute as defense counsel. *See* June 7, 2013 Minute Entry; Notice

4

of Appearance, ECF No. 10; *see also* June 7, 2013 Attorney Update (terminating attorney Jeffress). The defendant, represented by Ms. Wicks, agreed to a sixth exclusion of time under the Speedy Trial Act amounting to twenty-eight days. June 21, 2013 Minute Entry. Almost four months after his indictment and eight months after his arrest, the defendant entered, on July 6, 2013, a plea agreement with the government, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). *See* Plea Agreement ¶ 10. Pursuant to this written plea agreement, the defendant agreed to enter guilty pleas to Count One, for unlawful possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and Count Eight, for using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). *See id.* ¶ 1. The government agreed to dismiss the remaining counts, *id.* ¶ 5, and the parties agreed "that 120 months (10 years) is the appropriate sentence of imprisonment for the offenses to which [the defendant] is pleading guilty," *id.* ¶ 10.

At his plea hearing, the Court did not "accept the term[s] of the plea agreement with the [] recommended term of imprisonment." Plea Hearing Tr., July 19, 2013, at 9:13–15. Instead, the Court deferred decision on "whether or not 120 months is a reasonable time for" incarceration, "given [the defendant's] background, [and his] criminal history," until after the Court had reviewed the defendant's Presentence Investigation Report prepared by the U.S. Probation Office. *Id.* at 9:13–10:03. When questioned by the Court at his plea hearing, the defendant affirmed that he was "completely satisfied with the services of [his] lawyer in this case" and had "had enough time to talk to [his] lawyer about the charges against [him], about the plea agreement and whether or not [he] should accept the plea agreement[.]" *Id.* at 5:07–15. The Court instructed the defendant that agreeing to accept the government's plea agreement was "a

very important decision" and that he should "not hesitate to say, Judge, I need a moment to talk to my lawyer; I want to think about it[.]" *Id.* at 3:20–4:01.

At the defendant's sentencing hearing three months later, the Court accepted the agreed-upon plea and sentenced the defendant to incarceration for 120 months, consistent with the agreed-upon sentence in the plea agreement. Judgment as to Guthrie Wright at 4, ECF No. 22; *see also* Sentencing Hearing Tr., at 12:21–13:1. During the sentencing colloquy, the Court asked the defendant the following:

> The Court: Mr. Wright, are you fully satisfied with your lawyer in this case?
>
> The Defendant: Yes, Your Honor.
>
> The Court: And do you feel that you've had enough time to talk to [Ms.] Wicks about the plea agreement in the case, the sentencing memorandum, and the other documents filed in connection with your sentencing?
>
> The Defendant: Yes, Your Honor.
>
> The Court: All right . . . Hearing no objection from other—by either side to the presentence investigation report, I will accept it as my findings of fact at sentencing. . . .
>
> . . . .
>
> The Court: Mr. Wright, this is your opportunity to speak to me directly if you wish. You may come forward to the podium.
>
> The Defendant: Your Honor, I just want to say thank you for accepting the plea offer, and I just want to apologize to the Court and also my family. Thank you very much.

Sentencing Hearing Tr., at 5:14–6:01; 9:25–10:06. The Court then imposed the agreed-upon sentence of 120 months' incarceration. *Id.* at 12:20–13:11.

The defendant, six months after his sentencing, now seeks to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 on the grounds of ineffective assistance of counsel due to

the failure of both of his attorneys to raise a Fourth Amendment challenge to the search of the

defendant's two bags in his mother's apartment.  The government, at the Court's direction, *see*

May 7, 2014 Order, ECF No. 25, filed an opposition, Gov't's Opp'n Def's Mot. Vacate

("Gov't's Opp'n"), ECF No. 30.  The motion is now ripe for review.

## II.    LEGAL STANDARD

### A.  28 U.S.C. § 2255

Under 28 U.S.C. § 2255(a):

> A prisoner in custody under sentence of a court established by Act of Congress claiming
> the right to be released upon the ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, . . . may move the court which imposed the
> sentence to vacate, set aside or correct the sentence.

*Id.*  "[*A*]*fter* sentencing, a plea may be set aside *only* on direct appeal or *via* a section 2255

motion."  *United States v. Farley*, 72 F.3d 158, 162 (D.C. Cir. 1995) (emphasis in original)

(citing FED. R. CRIM. P. 32(d)); *see also Judd v. Gonzales*, No. 13-1504, 2013 U.S. Dist. LEXIS

148095, at *2 (D.D.C. Oct. 15, 2013) ("A challenge to the petitioner's conviction or sentence

must be made in the sentencing court under 28 U.S.C. § 2255." (citing *Pradelski v. Hawk–*

*Sawyer,* 36 F. Supp. 2d 1, 1–2 (D.D.C. 1999))); *see also* FED. R. CRIM. P. 11(e) ("After the court

imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the

plea may be set aside only on direct appeal or collateral attack.").  "If the court finds that . . .

there has been such a denial or infringement of the constitutional rights of the prisoner as to

render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment

aside and shall discharge the prisoner or resentence him or grant a new trial or correct the

sentence as may appear appropriate."  28 U.S.C. § 2255(b).

A judgment "cannot be lightly set aside by collateral attack" and "[w]hen collaterally

attacked, the judgment of a court carries with it a presumption of regularity." *Johnson v. Zerbst*, 304 U.S. 458, 468–69 (1938), *overruled in part on other grounds by Edwards v. Arizona*, 451 U.S. 477 (1981). The burden of proof rests on the petitioner to establish a denial of constitutional rights by a preponderance of evidence. *Id.*; *United States v. Simpson,* 475 F.2d 934, 935 (D.C. Cir. 1973) (concluding that, in § 2255 action to set aside plea of guilty, "the preponderance of evidence supports the judgment rejecting petitioner's claim"); *United States v. Stubblefield*, 931 F. Supp. 2d 118, 126 (D.D.C. 2013) ("The petitioner bears the burden of proof under § 2255 and must demonstrate his right to relief by a preponderance of the evidence."); *United States v. Ashton*, 961 F. Supp. 2d 7, 11 (D.D.C. 2013) (same); *United States v. Baugham*, 941 F. Supp. 2d 109, 112 (D.D.C. 2013) (same).

### B. Ineffective Assistance of Counsel

The defendant seeks to vacate his conviction and sentence on his guilty plea on the basis that his Sixth Amendment right to counsel under the U.S. Constitution was violated because he received ineffective assistance of counsel. *See* Def.'s Mem. at 1. The Sixth Amendment provides that "[d]uring plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384–85 (2012) (internal quotations omitted); *Missouri v. Frye*, 132 S. Ct. 1399, 1404 (2012). "It is well-established that the validity of a guilty plea depends on 'whether the plea represents a voluntary and intelligent choice,' and that 'the voluntariness of the plea depends on whether counsel's advice' satisfies the Sixth Amendment guarantee of effective assistance." *In re Sealed Case*, 488 F.3d 1011, 1015 (D.C. Cir. 2007) (citing *Hill v. Lockhart,* 474 U.S. 52, 56 (1985)); *see also United States v. McCoy*, 215 F.3d 102, 107 (D.C. Cir. 2000) ("A plea of guilty is constitutionally valid if and only if it

represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." (internal quotation marks omitted) (citing *Hill,* 474 U.S. at 56)). "A plea is not voluntary or intelligent, and therefore unconstitutional, if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence" required by the Sixth Amendment. *In re Sealed Case*, 670 F.3d 1296, 1303 (D.C. Cir. 2011) (internal quotation marks omitted) (citing *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C. Cir. 1990)).

Under the two-factor *Strickland v. Washington*, 466 U.S. 668 (1984), analysis for an ineffective assistance of counsel claim under the Sixth Amendment, the defendant must demonstrate: "that (1) his counsel's performance 'fell below an objective standard of reasonableness,' and (2) 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Payne v. Stansberry*, 11-5300, 2014 WL 3715067, at *2 (D.C. Cir. July 29, 2014) (quoting *Strickland*, 466 U.S. at 687–88, 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *United States v. Thompson*, 721 F.3d 711, 713 (D.C. Cir. 2013) (quoting *Strickland*, 466 U.S. at 694), *cert. denied*, 134 S. Ct. 629 (2013). The *Strickland* analysis applies to § 2255 proceedings. *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005); *see also United States v. Streater*, 70 F.3d 1314, 1318 (D.C. Cir. 1995) ("*Strickland v. Washington* applies to a collateral attack on the voluntary and intelligent nature of a guilty plea on Sixth Amendment grounds." (citation omitted) (citing *United States v. Horne,* 987 F.2d 833, 835 (D.C. Cir.), *cert. denied*, 510 U.S. 852 (1993))). Consistent with the burden on the defendant to establish the right to relief under § 2255, "[t]he burden to 'show that counsel's performance was deficient' rests

squarely on the defendant." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 687).

With respect to the first *Strickland* factor, the defendant "must show that counsel's actions were not supported by a reasonable strategy[.]" *Massaro v. United States*, 538 U.S. 500, 505 (2003); *United States v. Brisbane*, 729 F. Supp. 2d 99, 109 (D.D.C. 2010) (same). When engaging in this analysis, the Supreme Court has stated that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 134 S. Ct. at 17 (quoting *Strickland* 466 U.S. at 690); *Payne*, 2014 WL 3715067, at *2 ("'[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)); *see also United States v. Mendez-Cruz*, 329 F.3d 885, 891 (D.C. Cir. 2003) ("'Judicial scrutiny of counsel's performance must be highly deferential.'" (quoting *Strickland*, 466 U.S. at 689)).

With respect to the second *Strickland* factor, "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler* 132 S. Ct. at 1384 (citing *Frye*, 132 S. Ct. at 1388-89, 1399). The defendant has the burden of proving "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Id.* at 1384-85 (alteration in original) (internal quotation marks omitted) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Moreover, where, as here, "defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must *also* prove that his Fourth Amendment claim is meritorious . . . in order to demonstrate actual prejudice."

*Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (emphasis added); *see also United States v. Wood*, 879 F.2d 927, 934 (D.C. Cir. 1989) (same); *Stubblefield*, 931 F. Supp. 2d at 127 ("Finding merit in a petitioner's Fourth Amendment claim does not constitute *per se* ineffective assistance of counsel[.]").

## III.  DISCUSSION

### A.  Preliminary Procedural Issues

As a threshold matter, three procedural issues must be addressed before reaching the substance of the defendant's instant motion.  First, the government's opposition construes the defendant's motion as seeking to withdraw his guilty plea.  *See* Gov't's Opp'n at 6 ("At bottom, defendant seeks to withdraw his guilty plea.").  Consequently, the government asks the Court to apply the standard in *United States v. Jones*, 642 F.3d 1151, 1156–57 (D.C. Cir. 2011), which looks to "(1) whether the defendant has asserted a viable claim of innocence; (2) whether the delay between the guilty plea and the motion to withdraw has substantially prejudiced the government's ability to prosecute the case; and (3) whether the guilty plea was somehow tainted."  *Id.* (internal quotation marks omitted).  *Jones*' three-part test is applicable to a pre-sentencing motion to withdraw a guilty plea.  *Id.* at 1156.  After sentencing, a defendant may not withdraw his guilty plea.  *See* FED. R. CRIM. P. 11(e) ("After the court imposes sentence, the defendant may not withdraw a plea of guilty or nolo contendere, and the plea may be set aside only on direct appeal or collateral attack.").  Consequently, the Court applies the standard for adjudicating ineffective assistance of counsel claims made under § 2255.

Second, although the government did not raise in its opposition the appeal waiver terms in the operative Plea Agreement, the Court notes that those terms are not dispositive of the

defendant's instant § 2255 motion. Specifically, the plea agreement states that the defendant "knowingly and willingly waive[d] his right to appeal the sentence," subject to certain exceptions that are not applicable, and only "reserve[d] the right to make a collateral attack upon his sentence pursuant to 28 U.S.C. § 2255, if new and currently unavailable information becomes known to him." Plea Agreement ¶ 18. The defendant argues "that his guilty plea was involuntary and was based on faulty legal advice . . . ." Def's Mem. at 5. The D.C. Circuit has made clear that **"a waiver should not be enforced insofar as the defendant makes a colorable claim he received ineffective assistance of counsel in agreeing to the waiver . . . ." *United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009); *see also In re Sealed Case*, 702 F.3d 59, 63 (D.C. Cir. 2012)("A waiver of the right to appeal a sentence is presumptively valid and is enforceable if the defendant's decision to waive is knowing, intelligent, and voluntary.") (internal quotation and citations omitted); *In re Sealed Case*, 670 F.3d 1296, 1298 (D.C. Cir. 2011) (finding that defendant's "waiver of his right to appeal a below-Guidelines sentence set forth in the plea agreement is valid" where defendant "fails to show he was denied effective assistance of counsel as would entitle him to reversal of his conviction"); *United States v. Streater*, 70 F.3d 1314, 1316 (D.C. Cir. 1995) (finding that where defendant was induced to plead guilty as a result of trial counsel's "incorrect legal advice," the "plea was neither voluntary nor intelligent," and denial of a motion under 28 U.S.C. § 2255 to withdraw the guilty plea on the grounds of ineffective assistance of counsel is error). Consequently, the provision in the defendant's Plea Agreement waiving the right to bring a § 2255 motion does not operate to bar consideration of the instant claim of ineffective assistance of counsel.

Finally, the defendant has requested an evidentiary hearing in connection with his § 2255

motion. *See* Def.'s Mot. Vacate at 12, 14. A hearing on a § 2255 motion is not necessary when

"the motion and the files and records of the case conclusively show that the prisoner is entitled to

no relief." 28 U.S.C. § 2255(b); *United States v. Simmons*, 951 F. Supp. 2d 137, 141 (D.D.C.

2013). A hearing is similarly unwarranted where "the motion . . . fail[s] to allege sufficient facts

or circumstances upon which the elements of constitutionally deficient performance might

properly be found . . . [or] where the defendant has failed to present any affidavits or other

evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*,

139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted). In the

instant case, this Court presided over the defendant's plea and sentencing hearings, and the

defendant's motion, the government's opposition, and the transcripts of the proceedings held

before this Court conclusively show that the prisoner is not entitled to relief. Consequently, the

defendant's request for a hearing is denied.

### B. The Defendant's Claims

The defendant claims that he "requested Jonathan Jeffress and Jenifer Wicks, court appointed

counsels [sic], to file a motion to suppress evidence obtained in violation of the movant's Fourth

Amendment Right[s]," as a result of the police officers' search of the defendant's backpack and

attaché bag in his mother's apartment. Def.'s Mem. at 1, 5–10. He attests that, upon making this

request to his attorney, "counsel stated, 'we don't want to start filing motions or they may take

the cop off the table,'[1] and 'cops perform searches like this all of the time.'" *Id*. at 5. The

---

[1] The phrase "tak[ing] the cop off the table" is a reference to withdrawal of the plea agreement, as defendants who
plead guilty pursuant to a plea agreement are said to have "copped a plea." *See Boyd v. Griffin*, 11-CV-324 JFB,
2014 WL 1797477, at *4 (E.D.N.Y. May 7, 2014) (recounting defendant's statement that he "copped out that plea");
*Workman v. Craig*, 05-CV-00899, 2009 WL 2046015, at *3 n.3 (S.D.W. Va. July 8, 2009) (referencing defendant
who "copped a plea"); *Dabbs v. Tazewell Cnty., Ill.*, 05-CV-1148, 2006 WL 752804, at *2 (C.D. Ill. Mar. 20, 2006)
(referencing attorney who "repeatedly pressured [plaintiff] to cop a plea bargain"); *Logan v. Johnston*, 28 F. Supp.
98, 99 (N.D. Cal. 1939) (recounting defendant's desire to "cop a plea").

defendant adds that his counsel's "tactic of NOT pursuing a 4th Amendment claim as requested by movant was unreasonable and rendered counsel's assistance deficient" because the "4th Amendment issues should have 'jumped off of the page' to counsel, had counsel familiarized herself/himself with the case." *Id.* at 1–2 (emphasis in original). The defendant reasons that "his guilty plea was involuntary" and "unintelligently made" because it was "based on [this] faulty legal advice regarding elements of possible defense." *Id.* at 5. He "argues that had he prevailed on [a] suppression [motion] he would have exercised his constitutional right to trial" and that "BUT FOR counsel's failure to object to unconstitutional search, there is a reasonable probability of a different trial result." *Id.* at 4–5 (emphasis in original). The defendant's argument is unavailing because the defendant has not proven, by a preponderance of the evidence, either of the requisite *Strickland* factors, namely, that the performance of both of his attorneys was deficient or that he had a meritorious Fourth Amendment argument and thereby suffered prejudice by his counsel's failure to raise a suppression motion.

### C. Counsel's Performance Was Objectively Reasonable

With respect to the first *Strickland* factor, the Supreme Court recognized in *Tollett v. Henderson* that "[o]ften the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. A prospect of plea bargaining, [or] the expectation or hope of a lesser sentence, . . . are considerations that might well suggest the advisability of a guilty plea . . . ." 411 U.S. 258, 267–68 (1973) (internal citations omitted). Indeed, as the D.C. Circuit has explained:

> Defense counsel is not required to file a motion to suppress in every case in which evidence obtained by a search is offered against a defendant. On the contrary, counsel must exercise his [or her] best professional judgment in deciding whether

---

there are sufficient grounds for filing a motion.  Were this not so counsel would
be required to file a motion to suppress in every case, to protect himself [or
herself] against a charge of incompetency.

*United States v. Brown*, 663 F.2d 229, 231 (D.C. Cir. 1981) (citing *United States v. Aulet*, 618
F.2d 182, 187–88 (2d Cir. 1980)).

Thus, the decision not to challenge evidence uncovered during a search in order to obtain

a more favorable plea agreement may well be "supported by a reasonable strategy." *Massaro v.*

*United States*, 538 U.S. 500, 505 (2003) ("A defendant claiming ineffective counsel must show

that counsel's actions were not supported by a reasonable strategy and that the error was

prejudicial."); *see also Kimmelman*, 477 U.S. at 381 ("[T]he defendant bears the burden of

proving that counsel's representation was unreasonable under prevailing professional norms and

that the challenged action was not sound strategy." (citation omitted)).

Both of the defendant's attorneys pursued a strategy of obtaining a favorable plea

agreement, and in light of all the facts in the record, this was a justifiable tactic for three reasons.

First, the defendant's plea agreement stipulated to a 120-month term of incarceration that is

substantially below the applicable guidelines range for conviction of these offenses.  *See* Plea

Agreement ¶ 10.  Based upon the amount of illegal narcotics recovered from both the

defendant's person and bags, as well as the firearms found in his bags, and his prior criminal

history, with credit for acceptance of responsibility, the PSR recommended and the Court

determined, under the applicable Sentencing Guidelines, that defendant's Total Offense Level

was 29 and his Criminal History Category was VI, resulting in an advisory guideline range on

Count One, alone, of 151 to 188 months.  PSR ¶¶ 26–38, 115.  Count Eight required a 60-month

mandatory minimum, consecutive period of incarceration, resulting in a combined advisory

range of 211 to 248 months. PSR ¶ 115. Due to the defendant's status as a career offender and his conviction for a violation of 18 U.S.C. § 924(c), under U.S.S.G. § 4B1.1(c)(3), his applicable advisory range was 262 to 327 months' incarceration, or approximately 21–28 years in prison. PSR ¶ 116. Hence, the minimum advisory guideline range the defendant faced is more than double the term of incarceration imposed pursuant to the terms he accepted in the Plea Agreement. In other words, counsel for the defendant negotiated a plea agreement that was, as this Court characterized it, "substantially below the otherwise applicable Guideline range." Sentencing Hearing Tr., Oct. 25, 2013, at 10:16–18.

In addition, had the defendant been convicted at trial, his minimum guideline range would have been higher, as he would have been ineligible for a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), and, additionally, the defendant may have been convicted on the remaining six counts in the indictment, which the government dismissed pursuant to the plea agreement. *See* Plea Agreement ¶ 14; October 25, 2013 Minute Order (memorializing government's oral motion to dismiss Counts 2–7 of the indictment); *see also United States v. Pollard*, 602 F. Supp. 2d 165, 170 (D.D.C. 2009) ("To measure the reasonable probability that [the defendant] would have proceeded to trial, all counts that she would have faced must be considered and not just the counts to which she pled guilty."). These dismissed charges included unlawful possession with intent to distribute heroin, unlawful possession with intent to distribute marijuana, unlawful possession with intent to distribute 4-MEC and Methylone, unlawful possession with intent to distribute 1-benzylpiperazine, and two counts of unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year. *See* Indictment. Conviction on

16

these additional counts would have been considered in determining whether to impose a sentence within or even above the applicable advisory range. In the face of the risk of a lengthy prison term, defense counsel was certainly not remiss in seeking a favorable plea agreement.

Second, even if a motion to suppress the guns and drugs found in the defendant's bags were successful, the defendant's conviction for the drugs found on his person at the traffic stop was highly probable. The defendant makes no claim in his pending motion that the contraband found when he was searched upon his arrest—3.9 grams of cocaine, 4.3 grams of marijuana, and 15 Methylone tablets—were subject to a suppression motion. Consequently, the defendant would still be facing imprisonment even if counsel had acceded to the request he claims to have made to file a suppression motion for the contraband found during the consent search of the defendant's mother's apartment. Notably, if the defendant's attorneys had made a suppression motion, as the defendant says he requested, but that motion had not been successful and the government had withdrawn the plea offer to a 120-month agreed-upon sentence, the defendant would have faced a substantially longer period of incarceration and would, on this basis, arguably have a stronger basis to claim ineffective assistance of counsel. In light of this possibility, counsel made a reasonable strategic decision. *Kimmelman*, 477 U.S. at 384; *see also United States v. Calderon*, 163 F.3d 644, 646 (D.C. Cir. 1999) ("[I]t is well within the realm of valid strategic decisions of competent counsel not to seek adjustments to a client's base offense level when the government is willing both to drop a charge . . . and to forego seeking adjustments that would increase a sentence.").

Finally, even if, in hindsight review, counsel's failure to raise a suppression motion was erroneous, as the defendant contends, his attorneys still acted as effective counsel because their

decision to pursue a plea agreement was imminently reasonable. "If counsel makes such a judgment [not to file a suppression motion] and it falls within the range of competence demanded of attorneys in criminal cases, we may not find him ineffective because the perfect vision of hindsight indicates that his judgment may have been mistaken." *United States v. Brown*, 663 F.2d 229, 231 (D.C. Cir. 1981). In *Kimmelman v. Morrison*, which the defendant cites for support, the Supreme Court found that counsel's failure to file a motion to suppress was constitutionally deficient because it was "clear[]" that the defendant's attorney "failed to file a timely suppression motion, not due to strategic considerations, but because . . . he was unaware of the search . . . ." 477 U.S. at 385. Counsel's ignorance in *Kimmelman* was due to his "mistaken beliefs" that the government would turn over all inculpatory evidence, so he "conducted no pretrial discovery." *Id.* This is markedly different from the case at hand, where, by the defendant's account of the facts in his papers, both Mr. Jeffress and Ms. Wicks knew of the search and were allegedly made aware of the Fourth Amendment issues pertaining to that search by the defendant. *See* Def.'s Mem. at 5, 7. This does not demonstrate that counsel made an oversight, only that they disagreed with the defendant's opinion on the best legal strategy. *See United States v. Mathis*, 503 F.3d 150, 153 (D.C. Cir. 2007) (finding that attorney's assistance "was not constitutionally ineffective" where "[t]he attorney reviewed the record with care and decided that the [legal] issue was not worth pursuing . . . .").

The chronology of events culminating in the defendant's sentencing further confirms that counsel made no mistake but rather strategically pursued a plea agreement. In anticipation of obtaining a favorable plea agreement, the defendant agreed to a total of nine exclusions of time under the Speedy Trial Act, three pre-indictment and six post-indictment, amounting to a total

exclusion of 205 days, in order to pursue plea negotiations. From the defendant's own account of the facts, defendant's counsel did not raise a suppression motion when these plea negotiations were taking place, as the defendant claims he requested, as a tactic to avoid jeopardizing any plea agreement. *See* Def.'s Mem. at 5 ("[W]e don't want to start filing motions or they may take the cop off the table[.]"). The defendant had over six months to alert the Court that he did not agree with his counsel's decision to pursue plea negotiations in lieu of filing a suppression motion. He did not do so. Nor did he raise this point of contention with the Court at his plea hearing. Moreover, the defendant had an additional three months to withdraw his guilty plea between the plea hearing and the sentencing on the basis of dissatisfaction with counsel, yet, again, neglected to challenge his counsel's strategy.

The defendant, when questioned on two separate occasions, at both his plea and sentencing hearings, indicated that he was satisfied with his counsel in the case and affirmed that he had had sufficient time with counsel to discuss the plea agreement and sentence. Indeed, at his sentencing, the defendant even thanked the Court for accepting the Rule 11(c)(1)(C) plea agreement, a decision the Court had reserved at the plea hearing. Plea Hearing Tr., July 19, 2013, at 9:13–18; Sentencing Hearing Tr., Oct. 25, 2013, at 5:14–6:01; 9:25–10:06. This belies the defendant's instant claim that his counsel was ineffective. "[I]n challenging a guilty plea on the basis of ineffective assistance, the representations of the defendant at the plea hearing as to the adequacy of counsel and the knowing and voluntary nature of his plea, may 'constitute a formidable barrier' to his later refutations." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63 (1977));[2] *see also United States v. Zaia*,

_____

[2] This Circuit has held that although a defendant has represented that his counsel is satisfactory, such statements are "not invariably insurmountable and do[] not necessitate the summary denial of a motion to withdraw a guilty plea."

751 F. Supp. 2d 132, 139 (D.D.C. 2010) *on reconsideration in part*, 762 F. Supp. 2d 73 (D.D.C. 2011) ("The representations of the defendant at a plea hearing, together with any findings made by the judge in accepting the plea, 'constitute a formidable barrier in any subsequent collateral proceeding' because the defendant's 'declarations in open court carry a strong presumption of verity.'" (quoting *United States v. Farley,* 72 F.3d 158, 164–65 (D.C. Cir. 1995))); *Fears v. United States*, No. 06-0086, 2006 WL 763080, at *8 (D.D.C. Mar. 24, 2006) (finding no merit to ineffective assistance of counsel claim and noting that the petitioner "stated that he was satisfied with Ms. Hashimoto's services, had conferred with her thoroughly regarding the plea agreement, and fully understood the terms of the plea agreement"); *United States v. Mack*, No. 02-516, 2005 WL 3273950, at *4 (D.D.C. Aug. 11, 2005) (denying ineffective assistance of counsel claim in part because during plea hearing "defendant affirmed that she was satisfied with the legal services provided by her counsel in connection with the plea agreement, and that she had sufficient time to consult with her counsel about her case.").

In sum, counsel's litigation strategy of declining to raise a suppression motion, even though the defendant claims in his papers that he requested such motion, was "within the range of competence demanded of attorneys in criminal cases." *Horne*, 987 F.2d at 835.

### D. Defendant's Fourth Amendment Claim is Not Meritorious

Even if counsel had been ineffective, the defendant nevertheless would not prevail because the defendant has not established under the second *Strickland* prong that he has a meritorious Fourth Amendment claim and that he was therefore prejudiced by the failure to file a suppression motion. Thus, if defense counsel had filed a motion to suppress the evidence

---

*United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted).

uncovered in the consent search of the defendant's mother's apartment, this motion would have been unsuccessful. Under *United States v. Matlock*, "the voluntary consent of any joint occupant of a residence to search the premises jointly occupied is valid against the co-occupant, permitting evidence discovered in the search to be used against him at a criminal trial." 415 U.S. 164, 169 (1974). Hence, the constitutionality of warrantless searches authorized by the consent of a third party often turns on whether premises are considered jointly occupied and whether there is "common authority" over the "premises or effects sought to be inspected." *Id.* at 171; *United States v. Harrison*, 679 F.2d 942, 947 (D.C. Cir. 1982). The defendant claims that "counsel's ignorance" of "prevailing case law and the circuit precedent as it relates to 3d party consent searches" rendered counsel's advice deficient. *See* Def.'s Mem. at 3–4.[3] The defendant points to *United States v. Whitfield*, 939 F.2d 1071, 1075 (D.C. Cir. 1991), as precedent supporting his Fourth Amendment claim that should have been raised by his attorneys. Def.'s Mem. at 2. In *Whitfield*, the D.C. Circuit addressed the constitutionality of the search of an apartment that was occupied jointly by the defendant, in that case, and his mother, who had given consent to the law enforcement search. 939 F.2d at 1075. The Circuit found that the officers' search of the defendant's bedroom was unreasonable, notwithstanding that the officers had obtained general consent from the defendant's mother to search the apartment. *Id.* The *Whitfield* Court found the search invalid because the officers did not obtain sufficient information "to support a reasonable belief" that the defendant's mother had common authority over her son's bedroom and it was

---

[3] The defendant also apparently objects to the search on the basis that the arresting officers had no "individualized articulable suspicion" for conducting a search of the defendant's home after his arrest. *See* Def.'s Mem. at 6–7. This argument is inapposite as the applicable standard is not whether the search was constitutional as a *Terry* stop. *Terry v. Ohio*, 392 U.S. 1 (1968). Rather, the appropriate standard is whether the search of the apartment where the defendant lived was constitutional on the basis of third party consent.

therefore unreasonable for them to believe she could consent to a search of that specific area. *Id.* at 1075. The Circuit concluded that the search was unconstitutional because: the bedroom was not a common area; there was no indication that the defendant's mother made use of the room "at any time for any purpose;" and the officers did not otherwise inquire whether or not her adult son had "exclusive use" of the bedroom. *Id.* at 1074–75.

Contrary to the defendant's view that *Whitfield* is analogous and controlling, salient facts distinguish *Whitfield* from the instant case. Here, the defendant indicated to the arresting officers that his mother was the primary possessor of the apartment. *See* Stmt. Offense at 2 (defendant told police officers "that he lived with his mother and his son *at his mother's apartment* (emphasis added)). His mother told the officers that the defendant slept in both the living room and the bedroom, which he shared with his son, indicating that the defendant had no exclusive private space in the apartment. *Id.* The police officers conducting the search obtained both oral and written consent for the search from the defendant's mother and confirmed that she had "daily access" to the bedroom they searched. Stmt. Offense at 2. Moreover, the bedroom was shared by the defendant and his minor son, and the mother was the son's legal guardian. *Id.* The *Whitfield* Court specifically noted that "[w]hen a minor child's room is involved, agents might reasonably assume that the child's mother, in the performance of her parental duties, would not only be able to enter her child's bedroom but also would regularly do so." *Whitfield*, 939 F.2d at 1075. Similarly here, the officers gained consent to search the room of a minor child by the child's guardian, the defendant's mother, who is presumed to have access to the room, and who affirmatively attested that she had "daily access" to the bedroom. The facts of the instant case

are therefore clearly distinguishable from *Whitfield*.[4]

The defendant also points to *United States v. Peyton*, 745 F.3d 546, 554 (D.C. Cir. 2014), where the D.C. Circuit recently ruled on the constitutionality of searching a shoebox in the living room of an apartment jointly occupied by the defendant in that case and his great-grandmother. 745 F.3d at 554. The *Peyton* Court concluded that it was unreasonable for the officers to think the defendant's great-grandmother could grant consent to search the shoebox because she expressly told the officers that the defendant kept his "personal property" in the area where the shoebox was found. *Id.* According to the Court, this "strongly suggested she did *not* use the shoebox or have permission to do so" and therefore she had no actual or apparent authority to consent to the search of the shoebox itself. *Id.* This opinion was published several months after the defendant was sentenced, was unavailable at the time the defendant was indicted, and consequently could not have been cited for support in a suppression motion. Even if *Peyton* had been available before the defendant had accepted the government's plea agreement, *Peyton* is nevertheless factually distinguishable. In *Peyton*, the Circuit found that the "most critical[]" factor in determining whether the defendant's relative could consent to a search of the shoebox was the fact that the officers were informed that the defendant "kept his 'personal property' in

---

[4] The cases the defendant cites for support are similarly distinguishable from the instant facts. *See* Def.'s Mem. at 2–3. In each of the cited cases the courts found counsel deficient on the basis of the attorneys' failure to recognize clearly established, binding Fourth Amendment principles. *See Gentry v. Sevier*, 597 F.3d 838, 851–52 (7th Cir. 2010) (finding that officer's search of covered wheelbarrow pursuant to a *Terry* stop violated "fundamental principles of Fourth Amendment case law" and counsel's failure to challenge the search was "beyond the pale of an objectively reasonable strategy."); *Joshua v. DeWitt*, 341 F.3d 430, 439 (6th Cir. 2003) (finding counsel's performance deficient where counsel did not consider and raise applicable Supreme Court precedent finding similar searches unconstitutional, and Court could not "discern any strategic reason" why counsel would not raise the issue). By contrast here, the record reflects a clear strategic reason for failing to raise a suppression motion, namely, to secure a favorable plea agreement for the defendant. Further, by the defendant's own account of the facts in his papers, he alleges that they articulated this legal strategy to the defendant when he supposedly requested a suppression motion, indicating that his attorneys were aware of the constitutional implications of the search but, for tactical reasons, decided instead to pursue a plea agreement.

the area . . . where the shoebox was found." *Id.* The Circuit found this search unreasonable "in light of this clear statement that there was an area of the room that was not hers, [because] it was not reasonable for the police to believe that [the defendant] shared use of the closed shoebox." *Id.* at 554. There is no similar affirmative statement by the defendant's mother indicating that the backpack and attaché bag found in the bedroom were in an area exclusively used by the defendant. *See* Stmt. Offense. As the *Peyton* Court noted, absent the great-grandmother's statement indicating an area of exclusive use, finding a closed container in plain sight in a common area "might suggest . . . that it was reasonable for the police to believe that [the co-tenant's] authority over the . . . room also encompasse[s] the" container. *Peyton*, 745 F.3d at 554.[5] In fact, the defendant's mother's statement that the defendant slept in either the living room or the bedroom, which he shared with his son, indicates that there was no private space reserved for the defendant's exclusive use in the apartment. The police could have reasonably concluded that the mother had access to the bags in her grandson's room due to her "daily access" to the room, or by virtue of her legal guardianship of the defendant's minor son, who also slept in the bedroom. Believing that the defendant's mother could consent to a search of the

---

[5] The defendant further contends that the situation the officers encountered was ambiguous and the officers should have made further inquiry before searching the bags. Def.'s Mem. at 8–9. This contention is incorrect. *Illinois v. Rodriguez*, on which the defendant relies for this proposition, does not support the defendant's contention based on the facts in this case. 497 U.S. 177, 188 (1990). In that case, the Supreme Court ruled that a search of an apartment was unconstitutional where the third party granting consent did not have actual authority to so do so, because she was not technically a co-tenant or joint occupant, even though she told the officers conducting the search that she lived in the apartment. *Id.* The Supreme Court concluded that it was unreasonable for the officers to believe that the woman could grant consent because "the surrounding circumstances . . . [were] such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Id.* The Court held that consent by a third party was a "factual determination . . . [asking whether] the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises[.]" *Id.* (citing *Terry,* 392 U.S. at 21–22 (internal quotation marks omitted)). Consequently, *Rodriguez* stands for the unremarkable proposition that a "search is valid" if, objectively, the facts available at the time suggest that the consenting party has authority to consent to a search. *Id.* In the instant case, taking the facts as a whole, including the defendant's statement that his mother owned the apartment, the officers' belief that the defendant's mother had authority over the premises sufficient to grant consent to a search was reasonable.

two bags is, therefore, reasonable.

In sum, the defendant has failed to demonstrate that any suppression motion would have been successful because he has not demonstrated that the search of his bags was unconstitutional. Without a meritorious Fourth Amendment claim, the defendant is not entitled to relief because he cannot establish under *Strickland* that he was prejudiced by counsel's failure to raise a suppression motion. *See Kimmelman*, 477 U.S. at 375; *Stubblefield*, 931 F. Supp. 2d at 127.

## IV. CONCLUSION

Accordingly, because the defendant has not proven under *Strickland* that his counsel's performance was objectively unreasonable or that his Fourth Amendment claim is meritorious and that, therefore, counsel's failure to raise such motion prejudiced the defendant, the defendant's motion to vacate his sentence is denied. An appropriate Order accompanies this memorandum opinion.

Date: August 12, 2014

_____
BERYL A. HOWELL
United States District Judge